## KEATING v. EDGAR, Auditor, etc.

### No. 9260; March 29, 1884.

#### 3 Pac. 594.

**Mandamus.—Findings Held to Support** the judgment.

APPEAL from the Superior Court of the City and County of San Francisco.

The facts are stated in the dissenting opinion of Thornton, J.

William Craig for appellant; Scrivner & McKinne, Talcott & Crockett and Robert Crockett for respondent.

By the COURT.—The only question presented by the record on this appeal is whether the findings support the judgment. We think they do

Judgment affirmed.

We dissent: McKinstry, J.; Ross, J.

THORNTON, J., Dissenting.—I dissent. This is an application for a writ of mandate to be directed to William M. Edgar, auditor of the city and county of San Francisco, commanding him to audit a claim of the petitioner, Keating. The proceeding was instituted in the superior court for the city and county of San Francisco, where judgment was rendered for the applicant, from which the defendant appeals.

The case is substantially as follows:

The applicant was awarded a contract, as the lowest bidder, for certain work to be done on the new city hall. The applicant entered into a contract; performed the work according to such ·contract. The lines, levels and heights referred to. in the contract were furnished him after considerable delay by one Clifford, then the architect of the new city hall, whose duty it was to furnish them. At or about the time that the applicant had finished the work aforesaid, "in accordance with the lines, levels, and heights as aforesaid, furnished by said architect Clifford, the said Clifford was discharged for incompetency from his position and place as such architect," and he thereupon ceased to act. Thereafter, one Hatherton was duly appointed architect for the new city hall in the place of Clifford, and entered on the duties of his office. "That said Hatherton, after assuming the duties of his position as such architect, and after he had so entered into the said office or place, discovered and ascertained that the lines, levels and heights so furnished to the petitioner as said contractor by said Clifford, as aforesaid, were erroneous, and that the work done and performed by petitioner according to the lines, levels and heights, so as aforesaid furnished by said architect Clifford, would not answer the purpose or purposes for which the same was intended or designed, and was not in accordance with the work called for under said contract and the specifications thereto attached, and thereupon the architect Hatherton

furnished to said petitioner, as such contractor, new lines, levels and heights, and required your petitioner, as such contractor, to remodel and move the said foundations, and replace them in accordance with the lines, levels and heights so furnished by said Hatherton; that by the terms of the said contract it is provided that any and all work so performed by said contractor shall be done and completed in a proper and workmanlike manner, and to the satisfaction of the architect and the superintendent; that said architect was dissatisfied with and refused to approve the work so done and completed by said petitioner, in accordance with the lines, levels and heights so furnished by the said Clifford, until he had completed the work specified in said contract by the lines, levels and heights so furnished by the said Hatherton; that said contractor did remodel said work and foundations in accordance with the instructions and command and to the satisfaction of said Hatherton, at a great additional expense to himself; that the work and labor performed by relator. under the instructions of said architect Clifford, was well and faithfully done, and any and all imperfections in said work was wholly due to and caused by the mistake or incompetency of said architect Clifford; that when the work and labor so to be done and performed by petitioner, as such contractor, had been carefully, well and skillfully done, in accordance with the lines, levels and heights so as aforesaid furnished by said Hatherton, relator was paid only the original amount provided in said written contract to be paid." Afterward, the applicant presented to the board of new city hall commissioners his demand for nine hundred and fifty dollars (which demand is the one herein sought to be audited), "for damages actually suffered by him by reason of the above-mentioned facts, which said demand was, by a majority of the board, allowed and ordered to be paid." The defendant refused to audit the demand.

The facts above stated are so found by the court. We are of opinion that the court below erred in rendering judgment for the petitioner. It was provided by the contract that the lines, levels and heights were to be furnished by the architect, and that the contractor must observe them. The contract binds the contractor "to set out the lines and levels for all the works, and must be responsible for the correctness of such

setting out." These lines, levels and heights were furnished by the architect; the work was done by Keating in accordance with them and with the terms of his contract. It was the duty of the architect, when the work was so done, to have approved it and to have granted his certificate. Nevertheless, the succeeding architect refused to approve the work and grant his certificate until the work was done according to the lines, levels and heights furnished by him.

When the architect Hatherton refused to do what, under the facts found, it was his bounden duty to do—that is, approve the work and grant his certificate to the applicant, that such applicant might get his pay—the only course left open for the applicant was to take steps to compel him to do so. This he might have done, under the facts of the case, by an application to the proper judicial tribunal to compel the architect to do what the law made it his duty to do. Having failed to do this, and yielding to the demands of the architect that he should remodel the work, which he did at great expense, does not and cannot enlarge his rights. The architect had no right under the law to impose any such terms on a contractor who had done all that his contract required him to do. Such demands were unjust, illegal and arbitrary on the part of the architect, and the law did not require a submission to them by the applicant. When the work was completed the board of commissioners could only allow to him what it did allow, viz., the original amount provided in the written contract to be paid. This, it is found, was paid him, and under the contract and the facts found this was all the law allowed him, and all the law justified the board in allowing him. The statute is explicit in its requisition: "Nor shall a contractor be allowed a claim for work done or material furnished not embraced in his contract": Stats. 1875–76, sec. 14 (Act of March 24, 1876, p. 465). If the board had allowed a sum greater than that agreed by the contracting parties to be paid when the work was performed, such action would have been unauthorized, in conflict with the provisions of the statute just above cited and an inexcusable dereliction of duty on the part of its members. If, after the completion of the contract in accordance with the directions of the architect Clifford, it became necessary for any reason to remodel the work, or have it altered in any respect, it should have been

let to the lowest bidder, by the board, under call for bids, in accordance with the requirements of the statute which invested the board with all the powers they had: See section 14 of statute above cited. The board could not have work done without a contract regularly awarded and entered into, and after it was done allow its value. This was substantially forbidden by the statute. We see nothing in the statute, under which the board of commissioners acted, which authorized them to allow any claim for damages, whether for delay on the part of the architect or on any other ground. We have examined the statute, and can find no such power vested in the board by the act: See Act of March 24, 1876 (Stats. 1875–76, p. 461). Further, the consequences of such delay is provided for in the contract. It is stipulated therein that if the work of the contractor is delayed by the action of the architect and other causes specified, the contractor should be entitled to an extension of time for the performance of his work proportionate to the delay so caused. It is true that by section 10 the board is authorized to allow claims, but manifestly the claims here alluded to are those which the board is called to pass on for work done or materials furnished under contracts awarded and entered into under the provisions of the law from which such board derived its being and its powers. The board had no power to make this allowance to Keating, and such allowance was null. Therefore, the defendant acted properly in refusing to audit such claim, and the application of the petitioner Keating should be denied.